UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| JACK L. GAGAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO. 2:10-CV-026 JD |
| ) | |
| UNITED CONSUMERS CLUB, INC., ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

On January 15, 2010, Jack Gagan ("Gagan") filed a complaint in this court accusing the defendant of terminating him because of his age and raising various associated claims. [DE 1]. On July 8, 2011, United Consumers Club, Inc. ("UCC") filed its amended answer, affirmative defenses, and counterclaims. [DE 39]. On August 15, 2011, Gagan filed a motion to dismiss UCC's counter-claims and to strike two of UCC's affirmative defenses. [DE 44]. On October 3, 2011, UCC responded [DE 50], and on October 25, 2011, Gagan replied. [DE 53]. In an order issued on November 4, 2011, this court referred Gagan's motion to Magistrate Judge Cherry for a report and recommendation on the portion requesting dismissal of UCC's counterclaims and for a decision on the portion requesting that UCC's affirmative defenses be struck. [DE 54].

On December 15, 2011, Judge Cherry issued a report recommending that this court grant Gagan's motion and dismiss all three of UCC's counterclaims. [DE 55]. He also granted Gagan's motion to strike two of the affirmative defenses contained within UCC's amended answer. On January 3, 2012, UCC objected to Judge Cherry's report recommending dismissal of the counterclaims [DE 56], and moved the court to review Judge Cherry's decision to grant the motion to strike. [DE 57]. On January 20, 2012, Gagan responded to UCC's filings. [DE 58]. On January

1

30, 2012, UCC replied [DE 59], and on February 3, 2012, Gagan moved to strike UCC's reply on procedural grounds. [DE 61]. On February 9, 2012, UCC responded to the motion to strike. [DE 63]. The court now resolves all pending filings. First, the court denies Gagan's motion to strike UCC's reply brief filed in support of its objections to the report and recommendation of the magistrate judge. Next, the court denies UCC's objection to the magistrate judge's report and recommendation, adopts the same, and grants Gagan's motion to dismiss. Finally, the court denies UCC's objection to the magistrate judge's disposition of Gagan's motion to strike affirmative defenses.

## DISCUSSION

### I. GAGAN'S MOTION TO STRIKE UCC'S REPLY BRIEF [DE 61].

After Gagan responded to UCC's objections, UCC filed a reply. Gagan, in turn, filed a motion to strike that reply. He argues that Federal Rule of Civil Procedure 72, which governs proceedings following a magistrate judge's decision on a pretrial order, does not give an objecting party a right to file a reply brief in support of its objection. In response, UCC argues that an objection to a magistrate judge's report and recommendation amounts to a motion to review the magistrate judge's decision, and that, as such, it is governed by the rules regulating motions practice more generally. UCC invokes Local Rule 7-1, which lays out 14- and 7-day response and reply deadlines for any motion other than one requesting summary judgment. *See* N.D. Ind. L.R. 7-1.

Strictly speaking, Gagan is correct that Rule 72 does not authorize a reply. *See Pfizer, Inc. v. Apotex, Inc.*, 2005 WL 6457564 (N.D. Ill. 2005) ("The Court notes defendant filed not only a timely objection to the Report, but also a reply. The reply will be disregarded by the Court, however, because Rule 72(b) of the Federal Rules of Civil Procedure does not provide for a reply."); *Forsberg v. Always Consulting, Inc.*, 2008 WL 5449003 at *4 n. 6 (S.D.N.Y. 2008); *Medical Assur. Co., Inc. v. Weinberger*, 2008 WL 697165 at *1 n. 1 (N.D. Ind. 2008). But the lack of express authorization

2

does not render it a categorically impermissible practice. To the contrary, district courts routinely consider post-objection filings that at least *purport* to be replies. *See, e.g.*, *Snyder v. Tiller*, 2011 WL 4736294 at *1 (N.D. Ind. 2011); *United States v. Lake Cnty. Bd. of Com'rs*, 2006 WL 2051729 (N.D. Ind. 2006); *Tsabbar v. Eason*, 2006 WL 3755178 at *1 (S.D.N.Y. 2006). This is because, whether the rule expressly "authorizes" a filing or not, a filing generally can be made so long as leave of the court is sought and granted. *See Hall v. Norfolk S. Ry. Co.*, 2003 WL 23018426 at *1 (N.D. Ind. 2003) (considering a reply brief in a Rule 72 context after leave was sought and granted); *Mordukhaev v. Daus*, 2010 WL 3792191 at *1 n. 1 (S.D.N.Y. 2010) (declining to consider a reply because leave was not sought and granted).

True, UCC did not seek leave to file a reply in this case. And, "it is within the district court's discretion to strike an unauthorized filing." *Cleveland v. Porca Co.*, 38 F.3d 289, 297 (7th Cir. 1994). But if UCC *had* requested leave to file a reply, the court would have granted it. The law is rife with procedures designed to give the movant the final word, and the court perceives no great prejudice attendant to treating an objection to a magistrate judge's report and recommendation just like any other pretrial motion. Rather than expend unnecessary time and resources by striking UCC's reply and allowing them to seek (and obtain) leave of the court to re-file with proper permission, the court will simply consider the filing as it stands. Accordingly, counsel for UCC are cautioned against making a practice of filing reply briefs under these circumstances without first seeking leave of the court, but in this case Gagan's motion to strike [DE 61] is DENIED.

## II.    GAGAN'S MOTION TO DISMISS UCC'S COUNTERCLAIMS. [DE 44].[1]

In his motion to dismiss, Gagan argues several grounds for the dismissal of UCC's

---

[1] Although Gagan's motion to dismiss counterclaims and motion to strike affirmative defenses were filed together, the court disposes of them separately in this order.

3

counterclaims pursuant to Fed. R. Civ. P. 12(b)(6). [DE 44]. He argues that the first counterclaim, breach of fiduciary duty, was not brought within the two-year statute of limitations, and that it should be dismissed regardless for a failure to provide sufficient detail supporting the claim. Next, Gagan argues that UCC has not satisfied the heightened pleading requirements of Fed. R. Civ. P. 9(b) with respect to the second counterclaim, constructive fraud. Finally, Gagan argues that through the third counterclaim, unjust enrichment, UCC is attempting to retroactively reduce his wages in violation of Indiana law, and , further, that the claim was not brought within the appropriate limitations period.

The court referred Gagan's motion to dismiss to the magistrate judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b). Under those rules, the district court has discretion to accept, reject, or modify, in whole or in part, the findings or recommendations of the magistrate judge. The district court must undertake a *de novo* review "only of those portions of the magistrate judge's disposition to which specific written objection is made." *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999); *Goffman v. Gross*, 59 F.3d 668, 671 (7th Cir. 1995). If no objection or only a partial objection is made, the court reviews the unobjected portions for clear error. *Id*.

Here, the magistrate judge recommended that the court dismiss each of UCC's counterclaims. UCC objected to the recommendation of dismissal with respect to counterclaims one and three. Accordingly, the court reviews those claims *de novo*. UCC did not object to the dismissal of counterclaim two, alleging constructive fraud, so the court reviews the magistrate judge's recommendation of dismissal for clear error. But UCC did object to the magistrate judge's recommendation that the dismissal be with prejudice, so the court reviews the issue of prejudice *de novo*.

### A. Legal Standard

Fed. R. Civ. P. 12(b)(6) authorizes dismissal if the complaint fails to sets forth a claim upon which relief can be granted. *See Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172 (1965); *United States v. Singer Mfg. Co.*, 374 U.S. 174 (1963); *Xechem, Inc. v. Bristol-Meyers Squibb Co.*, 372 F.3d 899 (7th Cir. 2004). Generally speaking, courts faced with a Rule 12(b)(6) motion must inquire whether the complaint satisfies the "notice-pleading" standard. Under that test, "a complaint must provide a 'short and plain statement of the claim showing that the pleader is entitled to relief,' which is sufficient to provide the defendant with 'fair notice' of the claim and its basis." *Maddox v. Love*, 655 F.3d 709, 718 (7th Cir. 2011) (citing *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) (quoting Fed. R. Civ. P. 8(a)(2))). In evaluating the sufficiency of a claim under the notice-pleading standard,"we construe [the complaint] in the light most favorable to the nonmoving party, accept well-pleaded facts as true, and draw all inferences in her favor." *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010) (quoting *Reger Dev. LLC v. Nat'l City Bank*, 592 F.3d 759, 763 (7th Cir. 2010)).

But while notice-pleading remains the rule, the Supreme Court has promulgated a "two-pronged approach" to the consideration of a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1950 (2009) (citing *Twombly*). After *Iqbal*, the court begins "by identifying pleadings that, because they are no more than conclusions, are *not* entitled to the assumption of truth." *Id*. (emphasis added). This includes legal conclusions couched as factual allegations, *see Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 465 (7th Cir. 2010), as well as "threadbare recitals of a cause of action's elements, supported by mere conclusory statements[.]" *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 555). Next, "[w]hen there *are* well-pleaded factual allegations, a court should assume

5

their veracity and then determine whether they *plausibly* give rise to an entitlement to relief." *Id.* (emphasis added).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. Accordingly, while the plaintiff need not plead "detailed factual allegations[,]" *see Reynolds*, 623 F.3d at 1146 (citing *Iqbal*), the complaint "must actually *suggest* that the plaintiff has a right to relief, by providing allegations that raise a right to relief above the speculative level." *Maddox*, 655 F.3d at 718 (citing *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs.*, 536 F.3d 663, 668 (7th Cir. 2008) (emphasis in original)); *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir.2008)). "But a plaintiff's claim need not be probable, only plausible: 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012) (quoting *Twombly*, 550 U.S. at 556). "To meet this plausibility standard, the complaint must supply 'enough fact to raise a reasonable expectation that discovery will reveal evidence' supporting the plaintiff's allegations." *Id.* Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense, *see Iqbal*, 129 S.Ct. at 1950, and the court will now assess Gagan's motion to dismiss with respect to each of UCC's counterclaims accordingly.

### B.  Counterclaim One: Breach of Fiduciary Duty

UCC's first counterclaim is that Gagan breached his fiduciary duty by behaving inappropriately while he was a company officer. UCC alleges that Gagan had a fiduciary duty to behave appropriately, that he breached his duty by failing to do so, and that UCC was harmed as a

result. The magistrate judge recommended dismissal of the claim, and UCC objected. This court therefore reviews *de novo*.

Gagan's first argument is that the claim is untimely under Indiana law. "A statute of limitations provides an affirmative defense, and a plaintiff is not required to plead facts in the complaint to anticipate and defeat affirmative defenses." *Indep. Trust Corp.*, 665 F.3d at 935. "But when a plaintiff's complaint nonetheless sets out all of the elements of an affirmative defense, dismissal under Rule 12(b)(6) is appropriate." *Id*. (citing *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009)).[2] "When reviewing a Rule 12(b)(6) [motion to dismiss] state law claims based on a statute of limitations, we apply state law regarding the statute of limitations and 'any rules that are an integral part of the statute of limitations, such as tolling and equitable estoppel.'" *Id*. (quoting *Parish v. City of Elkhart,* 614 F.3d 677, 679 (7th Cir. 2010)).

---

[2] The court is aware of the Seventh Circuit's previous holdings that a statute of limitations argument never merits dismissal under Rule 12(b) and should instead compel the court to convert the motion to one for judgment on the pleadings pursuant to Rule 12(c). For example, in *Leavell v. Kieffer*, 189 F.3d 492 (7th Cir. 1999), the Seventh Circuit explained:

> "Kieffer moved to dismiss the complaint under Fed.R.Civ.P. 12(b)(6) for failure to state a claim on which relief may be granted; the district judge wrote that he was dismissing the suit under Fed.R.Civ.P. 12(b)(1) for lack of jurisdiction. Neither rule supports the disposition. The statute of limitations is an affirmative defense. Complaints need not anticipate or plead around affirmative defenses, *Gomez v. Toledo*, 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980), so there is no problem under Rule 12(b)(6). *Luckett v. Rent-A-Center, Inc.*, 53 F.3d 871, 873 (7th Cir.1995); *Tregenza v. Great American Communications Co.*, 12 F.3d 717, 718-19 (7th Cir.1993). Neither does a statute of limitations affect the district court's jurisdiction. *See, e.g., Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990); *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982). Jurisdiction is supplied by 28 U.S.C. § 1331, because a claim under *Bivens* presents a federal question. But when a complaint shows that the time for litigation has passed, *judgment on the pleadings* may be entered under Fed.R.Civ.P. 12(c). The Leavells had the opportunity for response that Rule 12(c) requires, and the decision does not depend on any document outside the pleadings, so the district court's disposition is not procedurally defective even though the judge should have cited Rule 12(c) rather than Rule 12(b)(1)."

*Id*. at 494-495 (emphasis added). But more recent cases, like *Indep. Trust Corp.*, have held that a claim *may* in fact be dismissed under Rule 12(b) on statute of limitations grounds. *See, e.g, In re marchFIRST Inc.*, 589 F.3d 901, 905 (7th Cir. 2009) (affirming dismissal under Rule 12(b)(6) on statute of limitations grounds); *Andonissamy v. Hewlett-Packard Co.*, 547 F.3d 841, 847 (7th Cir. 2008); *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005). This court has adopted the recent terminology, but under either approach, the analysis and result are the same.

As the magistrate judge observed, under Indiana law, a claim for "breach of fiduciary duty is a tort claim for injury to personal property and therefore the statute of limitation is two years." *Del Vecchio v. Conseco, Inc.*, 788 N.E.2d 446, 451 (Ind. Ct. App. 2003) (citing *Shriner v. Sheehan*, 773 N.E.2d 833, 846 (Ind. Ct. App. 2002); Ind. Code § 34-11-2-4(2)) (additional citations omitted). "[T]he statute of limitation begins to run when the plaintiff knew, or in the exercise of ordinary diligence could have discovered, that an injury had been sustained as a result of the tortious act of another." *City of E. Chi. v. E. Chi. Second Century, Inc.*, 908 N.E.2d 611, 618 (Ind. 2009) (citing *Malachowski v. Bank One, Indianapolis*, 590 N.E.2d 559 (Ind. 1992)). Thus, in order for Gagan to prevail on his statute of limitations argument, UCC's counterclaim must itself set out that UCC knew, or in the exercise of ordinary diligence could have discovered, that it had been harmed by Gagan's breach of fiduciary duty more than two years prior to the filing of the counterclaim.[3] UCC's counterclaim does not itself set out that UCC knew, or should have known, that "an injury had been sustained" as a result of Gagan's breach of fiduciary duty at *any* particular point in time. To the contrary, the allegation of damages is so undeveloped that it cannot be tied to any event or temporal occurrence. [DE 39 at 20]. While that vagary proves detrimental to UCC's case in other ways, it does preclude dismissing the counterclaim pursuant to Rule 12(b)(6) on statute of limitations grounds.

Gagan's second argument is that UCC's breach of fiduciary duty counterclaim fails to state a claim upon which relief can be granted. This analysis is subject to the "two-pronged approach" outlined by the Supreme Court in *Iqbal*, and discussed in detail above. The magistrate judge's analysis on this issue was succinct and accurate:

---

[3] Under Indiana law, the filing of the complaint does not toll the statute of limitations for any subsequent counterclaims. *Crivaro v. Rader*, 469 N.E.2d 1184 (Ind. Ct. App. 1984); *but see* Ind. T.R. 13(J)(1).

8

> "To state a claim for breach of fiduciary duty, UCC must allege 'three elements: (1) the existence of a fiduciary relationship; (2) a breach of the duty owed by the fiduciary to the beneficiary; and (3) harm to the beneficiary.' *York v. Fredrick*, 947 N.E.2d 969, 978 (Ind. Ct. App. 2011) (citing *Farmers Elevator Co. of Oakville, Inc. v. Hamilton*, 926 N.E.2d 68, 79 (Ind. Ct. App. 2010)). In its Counterclaim Count I, UCC alleges that Gagan owed fiduciary duties to UCC as Senior Vice President for Merchandising, that it breached that duty through episodes of misconduct and lack of judgment, and UCC was harmed as a result of Gagan's actions. UCC has sufficiently pled the existence of a fiduciary relationship and that Gagan breached that duty, and has included examples of the alleged breach. However, the counterclaim reveals no connection between the alleged misconduct and any harm to UCC. *See, e.g., Sharp Elec. Corp. v. Metro. Life Ins. Co.*, 578 F.3d 505, 512-513 (7th Cir. 2009) (upholding dismissal because '[a]t no point does [the plaintiff] explain how the alleged breach of fiduciary duty imposed (or could have imposed) a loss on the [defendant]') (citation omitted)."

[DE 55 at 6]. Accordingly, the magistrate judge recommends dismissal. Reviewing *de novo*, this court agrees. UCC's allegation that "[Gagan] breached his fiduciary duty to UCC, and UCC was damaged as a result" [DE 39 at 20] is nothing more than a "threadbare recital" of the elements of the cause of action. *See Iqbal*, 129 S.Ct. at 1949. The court need not accept such an allegation as true, and UCC pleads nothing else to demonstrate a causal relationship between the breach and the damages alleged. For example, UCC could have pleaded that one of the franchisees toward whom Gagan allegedly acted inappropriately withdrew his or her business as a result. Or, UCC could have pleaded not only that "personal interests" kept Gagan from giving his "best efforts," but that his failure to give his best efforts caused UCC to miss one or more lucrative opportunities on his watch. But UCC pleaded neither of those things, nor anything like them. Instead, at no point does UCC explain how the alleged breach of fiduciary duty imposed (or could have imposed) a loss on the company. As a result, under existing case law, the claim must be dismissed. *See Sharp Elec. Corp.*, 578 F.3d at 512-513.

Finally, the court notes that UCC argues against dismissal by raising case law discussing the appropriate measure of damages for a breach of fiduciary duty. [DE 56 at 2]. But these cases are

9

irrelevant. The insufficiency of UCC's pleading is not the result of a failure to allege the right type or amount of damages, or to allege either of those things in appropriate detail. The insufficiency is due to a failure to properly allege a *causal relationship* between the breaches described and the damages claimed. UCC's argument does nothing to remedy that deficiency. For the foregoing reasons, the court ADOPTS the report and recommendation of the magistrate judge with respect to UCC's breach of fiduciary duty counterclaim, and GRANTS Gagan's motion to dismiss that count. UCC's objection [DE 56] is DENIED inasmuch as it objects to the recommended disposition of counterclaim count one.

### C. Counterclaim Two: Constructive Fraud

UCC's second counterclaim alleges that Gagan concealed personal matters from the company despite a duty to disclose, and that those personal matters reduced his productivity. The company continued to compensate Gagan as an officer despite his reduced productivity, so Gagan's failure to disclose allegedly harmed the company and amounted to constructive fraud. The magistrate judge recommended dismissal for a failure to meet the heightened pleading requirements for fraud allegations set out by Fed. R. Civ. P. 9(b). UCC did not object, and the court reviews for clear error.

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The particularity requirement is designed to discourage a "sue first, ask questions later" philosophy. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441 (7th Cir. 2011) (citing *Berman v. Richford Indus., Inc.*, 1978 WL 1104 at *5 (S.D.N.Y. July 28, 1978)); *see also Fidelity Nat'l Title Ins. Co. of N.Y. v. Intercounty Nat'l Title Ins. Co.*, 412 F.3d 745, 748–49 (7th Cir.2005) (the particularity requirement "forces the plaintiff to conduct a careful pretrial investigation" and minimizes the risk of extortion

that may come from a baseless fraud claim); *Kennedy v. Venrock Assocs.*, 348 F.3d 584, 594 (7th Cir.2003) (the particularity requirement protects defendants from "privileged libel"). Put another way, Rule 9(b)'s "purpose is to ensure that the party accused of fraud, a matter implying some degree of moral turpitude and often involving a 'wide variety of potential conduct,' is given adequate notice of the specific activity that the plaintiff claims constituted the fraud so that the accused party may file an effective responsive pleading." *Lachmund v. ADM Investor Servs., Inc.*, 191 F.3d 777, 783 (7th Cir. 1999).

"Particularity," for Rule 9(b) purposes, means that a plaintiff must ordinarily "describe the 'who, what, when, where, and how' of the fraud—'the first paragraph of any newspaper story.'" *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust*, 631 F.3d at 441-442 (quoting *United States ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 854 (7th Cir. 2009)). A "boilerplate" recitation of fraud is "clearly insufficient on its own under Rule 9(b)" unless accompanied by specific dates, statements, or other references to put the defendant on notice of the specific fraud being alleged. *Fujisawa Pharm. Co., Ltd. v. Kapoor*, 814 F. Supp. 720, 726-727 (N.D. Ill. 1993). "[F]acts such as the identity of the person making the misrepresentation, the time, place and content of the misrepresentation, and the method by which it was communicated to the plaintiff" simply *must* be alleged in detail. *Gard v. I-Flow Corp.*, 2010 WL 4530354 at *1 (N.D. Ind. Nov. 2, 2010) (citing *Windy City Metal Fabricators & Supply, Inc.*, 536 F.3d at 668).

UCC's broad, boilerplate allegations - essentially that Gagan was distracted from his work from time to time by "personal matters," which he did not disclose to UCC, and that Gagan's failure to disclose these distractions amounted to constructive fraud – do not even come close to rising to the level of detail required by Rule 9(b). The magistrate judge concluded as much, UCC did not object, and this court agrees. There is no clear error here, and the court will dismiss the claim.

11

In a footnote, however, UCC argues in favor of dismissing the claim without prejudice to refiling after discovery has been conducted. [DE 56 at 1 n. 1]. Gagan responded, arguing that the purposes of Rule 9(b) will only be served by a dismissal *with* prejudice. By declining to specify the nature of the dismissal, the magistrate judge's recommendation amounted to a recommendation to dismiss with prejudice.[4] As a result, UCC's request for dismissal without prejudice constitutes a partial objection to the recommended disposition, and the court reviews the question *de novo*.

None of the authorities Gagan cites for his argument hold that a claim dismissed pursuant to Rule 9(b) *must* be dismissed with prejudice. Gagan cites *Kennedy*, 348 F.3d at 594, for its statement that Rule 9(b) "is thwarted by the filing of a stealth complaint in which allegations of fraud are avoided only to be added later by way of brief or other filing." Read in context, this quote plainly refers to the situation the Seventh Circuit was then discussing: whether fraud can be substantively alleged, thereby triggering rule 9(b), where the word itself is formally omitted from the complaint. But UCC openly pleaded constructive fraud in this case, and *Kennedy* has nothing at all to say about the issue actually before the court. Similarly, the remainder of Gagan's authorities opine on the purposes of Rule 9(b), and indicate that dismissal is necessary to vindicate those

---

[4] Pursuant to Fed. R. Civ. P. 41(b), "Unless the dismissal order states otherwise, a dismissal under this subdivision . . . and any dismissal not under this rule – except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19 – operates as an adjudication on the merits." Accordingly, courts have held that, unless otherwise specified, a dismissal for failure to state a claim under Rule 12(b)(6) is presumed to be both a judgment on the merits and rendered with prejudice. *See Paganis v. Blonstein*, 3 F.3d 1067, 1071 (7th Cir. 1993) ("[U]nless the judgment provides otherwise, involuntary dismissal, including a dismissal for failure to state a claim under Rule 12(b)(6), is an adjudication on the merits – in other words, a dismissal with prejudice."); *LeBeau v. Taco Bell, Inc.*, 892 F.2d 605, 608 (7th Cir. 1989); *see also Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 399 n. 3 (1981) ("The dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is a 'judgment on the merits.'"); *Carter v. Norfolk Cmty. Hosp. Ass'n*, 761 F.2d 970, 974 (4th Cir. 1985) ("A district court's dismissal under Rule 12(b)(6) is, of course, with prejudice unless it specifically orders dismissal without prejudice."); *U.S. ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 241 (1st Cir. 2004) ("[I]n the absence of a clear statement to the contrary, a dismissal pursuant to Fed.R.Civ.P. 12(b)(6) is presumed to be with prejudice."). The magistrate judge recommended only that UCC's counterclaims be dismissed; this amounts to a recommendation of dismissal with prejudice.

purposes, but none of them show that one sort of dismissal is preferable to the other, so long as dismissal occurs.

UCC's argument is more persuasive. UCC argues that dismissal with prejudice would prematurely bar consideration by the court of any future request to file an amended claim. If UCC had never pleaded its constructive fraud claim at all, choosing instead to wait until after discovery, the court would be permitted to decide, in its discretion, whether to allow the amendment. That obviously cannot happen if the claim is dismissed now with prejudice. Thus, dismissing the claim with prejudice "would place the Plaintiff in a worse position than he would have been in if he had simply declined to include these counts in his initial pleading." *Gard*, 2010 WL 4530354 at *2. "[F]or that reason, this Court finds that the interest of justice suggest that a dismissal *without* prejudice is appropriate[.]" *Id*. (emphasis added). Accordingly, the court ADOPTS the report and recommendation of the magistrate judge with respect to UCC's constructive fraud claim, and GRANTS Gagan's motion against counterclaim two to the extent that the claim is DISMISSED WITHOUT PREJUDICE.

### D. Counterclaim Three: Unjust Enrichment

In its third counterclaim, UCC alleges that it paid Gagan substantial sums of money to perform certain services, but he "did not adequately and properly perform his duties." [DE 39 at 21, ¶ 13]. Accordingly, UCC argues that to allow Gagan to retain those payments would be unjust, and Gagan "should be required to pay back to UCC the difference between the money he received and the reasonable value of the duties he performed for the Company." [DE 39 at 22]. Gagan argues that this is an impermissible attempt to retroactively reduce his wages.[5] UCC responds that it is a basic

---

[5] Gagan also argues that counterclaim three should be dismissed because it is untimely, but the court need not reach this point because the claim is dismissed on other grounds.

unjust enrichment claim, the converse of the one Gagan himself pleaded in the complaint, and that it should be allowed. The magistrate judge recommended dismissal, UCC objected, and the court reviews the issue *de novo*.

Under Indiana law, "present compensation" is the hourly or salaried wages of an employee. *Williams v. Riverside Cmty. Corr. Corp.*, 846 N.E.2d 738, 743-744 (Ind. Ct. App. 2006). "The defining characteristic of present compensation, at least with regard to an employee's hourly or salaried wage, is that it wholly and indefeasibly vests upon the performance of labor without any additional requirements[.]" *Id*. at 744. "Further, because present compensation indefeasibly vests upon the performance of labor, it can never be forfeited by an employee absent a contractual agreement to the contrary." *Id.* (citing *Haxton v. McClure Oil Corp.*, 697 N.E.2d 1277, 1281 (Ind. Ct. App. 1998)). Thus, the trigger that causes a wage or salary to "indefeasibly vest" is the performance of labor. If UCC was alleging that Gagan *never actually performed* the labor for which he was awarded compensation, UCC would be entitled to bring its quantum meruit claim.[6] Without the performance of labor, compensation does not indefeasibly vest, so the *Williams* rule does not apply to cases where the employer challenges the performance of labor itself.

For example, in *SJS Refractory Co., LLC v. Empire Refractory Sales, Inc.*, 952 N.E.2d 758 (Ind. Ct. App. 2011), the plaintiff, Empire, sued former employees after it discovered they had been

---

[6] The magistrate judge also concluded that, even if the *Williams* rule were not a problem, UCC's unjust enrichment claim would fail on its own terms because UCC did not actually perform labor for Gagan. The court disagrees with this conclusion. Unjust enrichment goes both ways, and it is well-settled that a person who *pays* for a service or benefit that is never rendered may pursue recovery under a theory of unjust enrichment, just as a person who *performs* a service may pursue payment. *See, e.g., St. Mary's Med. Ctr., Inc. v. United Farm Bureau Family Life Ins. Co.*, 624 N.E.2d 939, 944 (Ind. Ct. App. 1993) ("a person may be unjustly enriched not only *where he receives money* or property, but also where he otherwise receives a benefit." (emphasis added)); *Monroe Fin. Corp. v. DiSilvestro*, 529 N.E.2d 379 (Ind. Ct. App. 1988) (holding that an insurer may recover money payed to a payee by mistake under doctrine of unjust enrichment); *Cato Enters., Inc. v. Fine*, 271 N.E.2d 146, 175 (Ind. Ct. App. 1971) (the "principle of unjust enrichment allowing a recovery for the value of property and services given and rendered to another arises . . . where an *expenditure* by one person adds to the property of another" (emphasis added)). But it makes no difference here, because the *Williams* rule operates to preclude an unjust enrichment claim.

14

using company resources, credit lines, and facilities to launch a competing business: SJS. The former employees had even gone so far as to perform work and conduct client meetings for SJS while "on the clock" with Empire. The Indiana Court of Appeals affirmed a judgment in favor of Empire against its former employees in quantum meruit without any discussion of the *Williams* rule.

The distinction lies in the facts. In *SJS*, Empire compensated employees who, simply put, were not working for Empire at the time. They were working for a competitor. The bargained-for labor was never performed at all, and compensation never vested. Moreover, Empire's quantum meruit claim was not just for wages. The former employees used Empire credit cards and equipment to start their competing business. This case is different. UCC does not allege – at least, certainly not sufficiently to withstand 12(b)(6) scrutiny – that Gagan was surreptitiously working for someone else, that he did not perform the requested labor at all, or that he converted UCC assets to personal or competitor use. Instead, UCC alleges that Gagan *did* perform labor for UCC in return for his salary, but that in retrospect the labor did not meet UCC's expectations. This kind of attempt to retroactively reduce an employee's salary – or to revalue his labor – is plainly prohibited by Indiana law under *Williams*, and public policy militates against any ruling encouraging employers to file suit to recoup salaries already paid to a previous employee simply because they have decided in hindsight that they were not pleased with the employee's work.

To the extent that there is any conflict between the court's decision, based on the *Williams* rule, and the more general principles of quantum meruit, the court notes that in various areas of Indiana law, the specific controls over the general when two rules conflict. *See Sanders v. State*, 466 N.E.2d 424, 428 (Ind. 1984) (holding that a more specific statute controls over a more general one when the two conflict); *Magee v. Garry-Magee*, 833 N.E.2d 1083, 1092 (Ind. Ct. App. 2005) ("When a contract contains general and specific provisions relating to the same subject, the specific

15

provision controls."). There is no reason to apply a different standard when the conflict is between two common-law rules, and the *Williams* rule should control over equitable principles more generally. Finally, UCC's concerns that it would be somehow "unfair" to dismiss its unjust enrichment claim while allowing Gagan's to stand are inapposite. The doctrine of quantum meruit is designed to allow a party to recover in equity only what it deserves. There is no risk that in the absence of UCC's corresponding counterclaim Gagan will somehow be permitted to recover *more* in equity than he otherwise would. The magistrate judge's recommendation is ADOPTED, and Gagan's motion to dismiss is GRANTED, with respect to counterclaim three.

### III. GAGAN'S MOTION TO STRIKE TWO OF UCC'S AFFIRMATIVE DEFENSES. [DE 44].

Gagan's motion to dismiss included a motion to strike UCC's affirmative defenses 17 and 25. The magistrate judge decided this non-dispositive motion in the same order that included its report and recommendation on the motion to dismiss. When a party objects to a magistrate judge's decision on a non-dispositive motion, the district judge must "modify or set aside any part of the order that is clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a). In disposing of the motion to strike, Magistrate Judge Cherry stated the following:

> Federal Rule of Civil Procedure 12(f) provides that "[t]he court may strike from a pleading an insufficient defense or any redundant . . matter." Fed. R. Civ. P. 12(f). Although they do not agree on what those grounds are, both parties agree that affirmative defenses 17 and 25 rest on the same legal ground as the counterclaims - counterclaims that the Court has recommended that the District Court dismiss as legally insufficient. Accordingly, the affirmative defenses are redundant of the legally-insufficient counterclaims and are hereby stricken.

[DE 55 at 10]. In light of the court's adoption of the remainder of Judge Cherry's report and recommendation, there is nothing clearly erroneous or contrary to law in his decision to strike the affirmative defenses in question. The court DECLINES to modify or set aside that decision.

## CONCLUSION

Gagan's motion to strike UCC's reply brief [DE 61] is **DENIED**. The court **ADOPTS** the report and recommendation of the magistrate judge [DE 55] in its entirety. UCC's objections [DE 56 and DE 57] are **DENIED**, and Gagan's motion to dismiss and to strike affirmative defenses [DE 44] is **GRANTED** in full. UCC's first and third counterclaims are **DISMISSED WITH PREJUDICE**, and UCC's second counterclaim is **DISMISSED WITHOUT PREJUDICE**.

SO ORDERED.

ENTERED:  March 6, 2012

/s/ JON E. DEGUILIO
Judge
United States District Court